IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**BELLE GLEN II CONDOMINIUM**
**OWNERS ASSOCIATION, INC.,**

    **Plaintiff,**

**v.**                                      **Civil Action No. _____**
                                         **JURY DEMANDED**

**QBE INSURANCE CORPORATION,**

    **Defendant.**

## COMPLAINT

COMES NOW Belle Glen II Condominium Owners Association, Inc., by and through counsel, and for its claims against QBE Insurance Corporation would respectfully state and show as follows:

### PARTIES AND JURISDICTION

1.    Belle Glen II Condominium Owners Association, Inc. (hereafter "Belle Glen II") is a Tennessee corporation duly formed under the condominium and business organization laws of the State of Tennessee. Belle Glen II is a condominium owners association that is governed by a Board of Directors pursuant to Tennessee law. The condominium units and associated property are located at 7241 Highway 70 South, Units 101-112, 113-120, 201-215, Nashville, Davidson County, Tennessee (the "Insured Premises").

2.    QBE Insurance Corporation ("QBE") is a Pennsylvania corporation engaged in the business of insurance in the State of Tennessee.

3.    This Complaint originates as the result of a storm that severely damaged the

improvements and other property located at the Insured Premises, and QBE's unlawful actions as follows: (1) QBE's partial denial of Belle Glen II's claim for insurance proceeds; and (2) QBE's refusal to submit to the appraisal process as set forth in the insurance policy at issue.

## **FACTS**

4. At all times material hereto, Belle Glen II was an insured in an insurance contract whereby QBE agreed to insure the Insured Premises against property damage, being Policy No. CAU316966-1 (the "Policy"). The Policy is incorporated herein by reference as if set forth verbatim. As relevant hereto, the term of the policy was January 1, 2012 through January 1, 2015.

5. At all times relevant hereto, the Insured Premises consisted of three two-story brick veneer condominium buildings containing thirty-five residential units, nine carport structures, and surrounding areas.

6. The Policy provided insurance coverage for loss or damage to the Insured Premises. The Policy is an "all risk" policy, which means that it provides insurance coverage for all direct physical loss or damage to covered property unless the loss is specifically excluded in the Policy.

7. The Policy's coverage for the buildings and structures on the Insured Premises was on a "guaranteed replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

8. Pursuant to the Policy, Belle Glen II paid a premium to QBE in exchange for insurance coverage. Belle Glen II paid the required premiums at all times relevant to this Complaint.

9. On or around March 2, 2012, a severe wind and hail storm struck the Insured Premises, causing substantial wind and hail damage to buildings and structures located on the Insured Premises. On January 30, 2013, a second wind storm hit the Insured Premises, causing further damage to the roofs at the Insured Premises. The March 2, 2012 and January 30, 2013 shall hereafter be referred to collectively as the "Loss". As a result of the Loss, the buildings and structures located on the Insured Premises suffered immediate and direct physical loss, including but not limited to damage to roof shingles, gutters, downspouts, siding, soffit, interior water damage, carport roofs, roof pipe boots, roof vents, roof ridge caps, etc.

10. The Policy was in effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

11. The Loss was promptly reported to QBE.

12. Belle Glen II fulfilled all of the duties after the Loss that were imposed upon it by the Policy.

13. QBE, by and through its managing general agent, Community Association Underwriters of America, Inc. ("CAU"), admitted and represented to Belle Glen II that the Loss was a compensable claim, and a portion of Belle Glen II's claim as a result of the Loss has in fact been paid.

14. A dispute arose between Belle Glen II and QBE as to the amount of the Loss.

15. On November 20, 2012, Belle Glen II demanded appraisal pursuant to the appraisal provision of the Policy. Specifically, the Policy provides:

**N. Appraisal**

1. If you and we disagree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. In this event, either party will do the following:

      a. Select its own appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.
         (1) The appraisers will state separately and independently the amount of the loss or damage.
         (2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.
         (3) An agreement by any two will be binding as to the amount of the loss.
      b. Pay the costs of its own appraiser.
      c. Pay its share of any other costs of the appraisal as follows:
         (1) If the amount agreed upon in N.1.a.(3) above is higher than either party's appraisal in N.1.a.(1), above, the party submitting the lower appraisal will pay all such costs.
         (2) If the amount agreed upon in N.1.a.(3) is lower than either party's appraisal in N.1.a.(1), above, the party submitting the higher appraisal will pay all such costs.
         (3) Otherwise, each party's share of such other costs is determined using the following steps:

**Step 1:**
Determine, by subtraction, the difference between that party's appraisal in N.1.a.(1) above and the amount agreed upon in N.1.a.(3) above.

**Step 2:**
Divide the result of Step 1 by the difference between each party's appraisal in N.1.a.(1) above.

**Step 3:**
Multiply the result of Step 2 by the total of such other costs to determine that party's share.

2. If we submit to an appraisal, we will still retain our right to deny the claim.

16. QBE has refused to submit the claim to appraisal to determine the amount of the loss. In support of its refusal to submit to appraisal, QBE alleges that the claim involves coverage issues inappropriate for the appraisal process. Despite Belle Glen II's requests, QBE has been unable or unwilling to identify the coverage issues which it alleges are in dispute. In reality, this claim involves no coverage issues, but rather simply requires a determination of the amount of the loss. The only disputed issue is the amount owed by QBE to Belle Glen II for wind, water and hail damage to buildings and structures on the Insured Premises during the term

4

of the Policy. There is no reasonable coverage dispute, and this claim is appropriate for the appraisal process as set forth in the Policy.

17. Despite the prior agreement by QBE that the Loss is compensable under the Policy and the fact that Belle Glen II has fulfilled all duties imposed upon it by QBE and is at no fault in this matter, QBE has refused to timely and fully pay Belle Glen II's claim for insurance proceeds.

18. QBE's refusal to promptly and fully pay Belle Glen II the amounts owed as a result of the Loss is without justification. QBE's refusal to submit the claim to appraisal is without justification.

19. QBE's refusal to pay the money and benefits due and owing Belle Glen II under the Policy and refusal to submit the claim to appraisal has caused Belle Glen II to seek legal counsel and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which Belle Glen II is entitled.

## CAUSES OF ACTION

### Count I – Breach of Contract

20. The allegations contained in paragraphs 1-19 of this Complaint are incorporated herein by reference as if set forth verbatim.

21. The Policy issued by QBE to Belle Glen II is a binding contract, and is supported by valid consideration.

22. QBE is in total, material breach of the Policy, and QBE is liable to Belle Glen II in the maximum amount allowed by the Policy for the Loss, less payments previously made. Specifically, QBE breached its contract with Belle Glen II by its failure and refusal to fully and promptly pay the amounts owed to Belle Glen II as a result of the Loss as required by the terms

5

of the Policy.  QBE also breached its contract with Belle Glen II by refusing to submit the claim to appraisal for valuation of the amount of the loss.

23. As a result of QBE's breach of contract, Belle Glen II has sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to the replacement cost of the damage to the Insured Premises, temporary repairs, and reimbursement for mitigation efforts.

24. QBE is liable to Belle Glen II for its losses.

WHEREFORE, as a result of the foregoing, Belle Glen II would respectfully request that this Honorable Court award a judgment against QBE as follows:

A. For an Order requiring that QBE honor the Policy and submit the disagreement concerning the amount of the loss to appraisal as properly demanded by Belle Glen II;

B. For compensatory damages not to exceed $300,000.00;

C. For all costs incurred by Belle Glen II as a result of this action;

D. For pre- and post-judgment interest; and

E. For such other further and general relief as this Court deems just and equitable.

## IV. JURY DEMAND

Belle Glen II demands a jury.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

*/s/ J. Brandon McWherter*
J. BRANDON MCWHERTER #21600
CLINTON H. SCOTT #23008
*Attorney for Plaintiff*
101 N. Highland
Jackson, Tennessee 38301
Telephone: (731) 664-1340
bmcwherter@gilbertfirm.com